KeyCite Yellow Flag - Negative Treatment
**Distinguished by** [J.S. ex rel. Snyder v. Blue Mountain School Dist.,](#) M.D.Pa., March 31, 2014

195 Fed.Appx. 93
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also Third Circuit
LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)
United States Court of Appeals,
Third Circuit.

TENAFLY ERUV ASSOCIATION, INC.;
Chaim Book; Yosifa Book; Stefanie Dardik
Gotlieb; Stephen Brenner, Appellants
v.
The BOROUGH OF TENAFLY,; Ann
Moscovitz, individually and in her official
capacity as Mayor of the Borough of Tenafly;
Charles Lipson; Martha B. Kerge; Richard
Wilson; Arthur Peck; John T. Sullivan, each
individually and in their official capacities as
Council Members of the Borough of Tenafly.

No. 01-3301.
|
Sept. 1, 2006.

**Synopsis**
**Background:** Orthodox Jewish residents brought civil rights action against borough. The United States District Court for the District of New Jersey, [William G. Bassler,](#) J., [155 F.Supp.2d 142,](#) denied preliminary injunction requested by residents, but the Court of Appeals, [309 F.3d 144,](#) reversed and remanded. The residents then filed motions for attorney fees.

**Holdings:** The Court of Appeals, [Ambro,](#) Circuit Judge, held that:

[[1]](#) counsel's hourly rates were reasonable;

[[2]](#) plaintiffs were entitled to fees for all work on case, even though they only prevailed on one of three claims;

[[3]](#) particular items on attorneys' time sheets were compensable, with the exception of entries that were not adequately documented, time spent giving media interviews, and hours spent on administrative tasks;

[[4]](#) no decrease in lodestar was warranted; and

[[5]](#) plaintiffs were entitled to recover costs and expenses related to the litigation, with the exception of amounts that were already awarded in the judgment on the merits.

Motions for fees granted.

West Headnotes (17)

[**[1]**](#)  **Civil Rights**
 [Time Expended; Hourly Rates](#)

Hourly rates of between $550 and $175 for attorneys who represented plaintiffs in civil rights litigation in New Jersey were reasonable, for purposes of awarding attorney fees, given evidence that those rates fell within norm for New Jersey attorneys with similar experience and position at the time the case was decided on the merits. [42 U.S.C.A. § 1988(b).](#)

[12 Cases that cite this headnote](#)

[**[2]**](#)  **Civil Rights**
 [Taxation](#)

Hearing was not necessary to determine whether attorneys' hourly rates were reasonable, for purposes of awarding attorney fees in civil rights litigation, absent submission of evidence of a different reasonable hourly rate. [42 U.S.C.A. § 1988(b).](#)

[7 Cases that cite this headnote](#)

[**[3]**](#)  **Civil Rights**
 [Services or Activities for Which Fees May Be Awarded](#)

Civil rights plaintiffs who prevailed on their Free Exercise Clause claim, but not their claims

WESTLAW  © 2016 Thomson Reuters. No claim to original U.S. Government Works.    1

under the Fair Housing Act and the Free Speech Clause, were nevertheless entitled to recover attorney fees for all work on the case, since all of their claims were based on a common core of facts and the arguments were intertwined. U.S.C.A. Const.Amend. 1; Civil Rights Act of 1968, § 801 et seq., 42 U.S.C.A. § 3601 et seq.

5 Cases that cite this headnote

[4]  **Civil Rights**
  Time Expended;  Hourly Rates

Nine hours that attorney for civil rights plaintiffs spent drafting correspondence with court, 30 hours that he spent preparing necessary forms and statements to allow the filing of briefs, and 22 hours he spent drafting Fair Housing Act portion of brief were reasonable, for purposes of determining attorney fee award, especially since attorney did not seek reimbursement for one-third of his hours. 42 U.S.C.A. § 1988(b).

2 Cases that cite this headnote

[5]  **Civil Rights**
  Services or Activities for Which Fees May Be Awarded

Presence of several attorneys at oral argument in civil rights litigation was not duplicative or unnecessary, for purposes of determining attorney fee award, given that it was a complicated case with multiple plaintiffs raising important constitutional claims. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[6]  **Civil Rights**
  Time Expended;  Hourly Rates

One-hundred-forty hours spent collectively by attorneys for plaintiffs in civil rights litigation on meetings, conference calls, and consultations with amici was not unreasonable, for purposes of determining attorney fee award, given complexity of case and fact that many plaintiffs were involved. 42 U.S.C.A. § 1988(b).

3 Cases that cite this headnote

[7]  **Civil Rights**
  Taxation

Entries on attorney's time sheets reporting his "attention to" a particular matter, such as a brief or reply, were sufficiently documented, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[8]  **Civil Rights**
  Time Expended;  Hourly Rates

Three-hundred-twenty-seven hours spent preparing opening brief for appeal in civil rights litigation, 173 hours spent preparing reply brief, and 86 hours spent preparing for oral argument were not excessive, for purposes of determining attorney fee award, given that it was a complex constitutional case with numerous plaintiffs and amici, and the court requested supplemental briefing two weeks before oral argument. 42 U.S.C.A. § 1988(b).

2 Cases that cite this headnote

[9]  **Civil Rights**
  Taxation

Entries on attorney's time sheets that indicated "attn to papers" and "attn to status" but did not further identify those papers or matters were not adequately documented, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

5 Cases that cite this headnote

[10]  **Civil Rights**
  Taxation

Entries on attorney's time sheets that merely indicated "e-mails" and "conference call" were not adequately documented, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[11]  **Civil Rights**



 Services or Activities for Which Fees May Be Awarded

Time spent by attorney on post-decision telephone interviews to reporters was not compensable as legal services, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[12] **Civil Rights**
 Taxation

Entries on attorney's time sheets that merely indicated "correspondence" and "review papers" were not adequately documented, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[13] **Civil Rights**
Time Expended;  Hourly Rates

Time spent by attorney on administrative tasks, such as organizing correspondence and faxing documents, would be reduced by two-thirds, for purposes of determining attorney fee award in civil rights litigation. 42 U.S.C.A. § 1988(b).

1 Cases that cite this headnote

[14] **Civil Rights**
Amount and Computation

No adjustment to lodestar amount was warranted when determining attorney fee award in civil rights litigation, even though plaintiffs were only successful on some of their claims, since all of the plaintiffs' claims were connected and the case presented complicated and important questions of constitutional law. 42 U.S.C.A. § 1988(b).

2 Cases that cite this headnote

[15] **Civil Rights**
 Costs

Costs claimed by attorneys for prevailing parties in civil rights litigation were adequately documented, where attorneys submitted a detailed, itemized list of expenses that was over 40 pages long.

Cases that cite this headnote

[16] **Civil Rights**
 Costs

Costs of more than $33,000 claimed by attorneys for prevailing parties in civil rights litigation, which included $6,700 for copying, $12,000 for use of electronic databases, and $11,200 for transcripts and printing costs, were reasonable. 42 U.S.C.A. § 1988(b).

Cases that cite this headnote

[17] **Civil Rights**
Costs

Costs requested by prevailing parties in civil rights litigation on post-judgment motion for attorney fees would be reduced by photocopying costs that had already been awarded in the judgment on the merits, since those charges were duplicative. 42 U.S.C.A. § 1988(b).

1 Cases that cite this headnote

 **\*95** Appeal from the United States District Court for the District of New Jersey (D.C. Civil Action No. 00-cv-06051), District Judge: Honorable William G. Bassler.

**Attorneys and Law Firms**

Robert G. Sugarman, Esquire, Harris J. Yale, Esquire, Craig L. Lowenthal, Esquire, Weil, Gotshal & Manges, New York, NY, Richard D. Shapiro, Esquire, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, Nathan Lewin, Esquire, Alyza D. Lewin, Esquire, Lewin & Lewin, Washington, D.C., for Appellants.

Walter A. Lesnevich, Esquire, Lesnevich & Marzano-Lesnevich, Tenafly, NJ, Noah R. Feldman, Esquire, New York University Law School, New York, NY, for Appellees.

Kevin J. Hasson, Esquire, Anthony R. Picarello, Jr., Esquire, Roman P. Storzer, Esquire, Derek L. Gaubatz, Esquire, The Becket Fund for Religious Liberty, Nathan J. Diament, Esquire, Union of Orthodox Jewish Congregations, Abba

Cohen, Esquire, Agudath Israel of America, Washington, D.C., David Zwiebel, Esquire, Mordechai Biser, Esquire, Agudath Israel of America, New York, NY, Ronald K. Chen, Esquire, Rutgers Constitutional Litigation Clinic, Edward Barocas, Esquire, J.C. Salyer, Esquire, American Civil Liberties Union of New Jersey Foundation, Newark, NJ, for Amicus-Curiae.

Before: AMBRO, NYGAARD, and ROTH Circuit Judges.

OPINION ON MOTIONS FOR ATTORNEYS FEES

AMBRO, Circuit Judge.

**\*\*1** We have before us motions by the appellants in this case for attorneys' fees pursuant to 42 U.S.C. § 1988. The appellees agree that appellants are entitled to fees, but dispute the amounts claimed. The complicated factual and procedural background of this case (with which the parties are thoroughly familiar) is discussed in our opinion in *Tenafly Eruv Association, Inc. v. Borough of Tenafly,* 309 F.3d 144 (3d Cir.2002), and we do not restate it here.

### I.

The legal standards governing our award of attorney's fees are familiar. Under 42 U.S.C. § 1988(b), our Court has discretion to award the "prevailing party" in a civil rights action "a reasonable attorney's fee as part of the costs." *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). It is undisputed that appellants-who persuaded us to reverse the District Court's decision **\*96** against them and direct that Court to enter a preliminary injunction in their favor-were the prevailing parties in this action. *See, e.g., Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) ("[T]o be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."); *Pub. Interest Research Group of N.J., Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (noting that a "prevailing party" is one that "achieved some of the benefit sought by the party" (internal quotation marks omitted)). We must therefore consider whether the requested fees are reasonable.

In determining the reasonableness of requested fees, we first calculate the "lodestar" amount, "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir.2001) (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). The reasonable hourly rate "is calculated according to the prevailing market rates in the relevant community." [1] *Id.; Pub. Interest Research Group,* 51 F.3d at 1185 ("In general, a reasonable fee is one which is adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." (internal quotation marks omitted) (alteration in original)). We then consider whether the time charged is reasonable, excluding "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission" to his client. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Maldonado,* 256 F.3d at 184 (same). Once the lodestar amount has been calculated, a court has discretion to adjust the fee up or down, based on a variety of factors. [2]

When, as here, a litigant relies on several legal theories in support of its position, we must decide whether the claims are "distinctly different claims for relief that are based on different facts and legal theories" (in which case "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," and is therefore not compensable), or "involve a common core of facts or [are] based on related legal theories" (in which case the "lawsuit cannot be viewed as a series of discrete claims," and we must instead "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). *Hensley,* 461 U.S. at 434-35, 103 S.Ct. 1933. As the Supreme Court has explained,

> **\*\*2** cases involving ... unrelated claims are unlikely to arise with great frequency.... Where a plaintiff has obtained **\*97** excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, ... [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for

reducing a fee. The result is what matters.

*Id.* at 435, 103 S.Ct. 1933 (citation omitted).

## II.

**A. Hourly Rates**

We begin with the reasonableness of appellants' counsel's hourly rates. Counsel for appellants Tenafly Eruv Association and Stefanie Dardik Gotlieb-Robert G. Sugarman, Harris J. Yale, Craig L. Lowenthal, and Richard D. Shapiro-claim $500.00 per hour, $350.00 per hour, $175.00 per hour, and $281.61 per hour, respectively. Counsel for appellants Chaim Book, Yosifa Book, and Stephen Brenner-Nathan Lewin and Alyza D. Lewin-claim $550.00 per hour and $315.00 per hour, respectively. Appellees contend these rates are excessive.

[1] [2] We conclude that the requested rates are reasonable. There is no dispute that appellants' attorneys are experienced lawyers working at highly regarded law firms in New York, New Jersey, and the District of Columbia. They have submitted evidence that the requested rates fall within the norm of New Jersey attorneys with similar positions at top New Jersey law firms in late 2002 (when we decided this case on the merits),[3] and appellees have given us no contrary evidence.[4] To be sure, the requested rate for Mr. Sugarman ($500.00 per hour), an attorney in New York City, falls at the high end of the range in late 2002 for New Jersey attorneys, but we are confident that an attorney of his experience and educational background would command such a fee as a partner at a top New Jersey law firm. And though Mr. Lewin's requested rate ($550.00 per hour) would, according to the evidence in the record, place him among the few top-earning partners in New Jersey, it is plain from his qualifications and experience that he is worthy of such a stature were he practicing in New Jersey. We therefore approve the requested rates as reasonable, given the evidence in the **\*98** record that they are comparable to the rates charged by similarly situated attorneys at top New Jersey law firms.

**B. Time Charged**

1. *Issues that are Compensable*

[3] In deciding whether the time charged by appellants' attorneys is reasonable, we consider first whether, under *Hensley,* it is appropriate to award them compensation for all work on this case or only the issues on which they succeeded. Appellants raised several issues on appeal, including constitutional claims under the Free Speech and Free Exercise Clauses of the First Amendment and a statutory discrimination claim under the Fair Housing Act, 42 U.S.C. § 3604(a). Although these arguments were in some sense "distinct" (in that they were based on different legal provisions), this is not a reason to deny fees for all claims. Indeed, we note that each of appellants' claims was based on a common core of facts, and the arguments were intertwined.

**\*\*3** For example, although we held that the Fair Housing Act claim was unavailing because appellants were not "victims of a discriminatory housing practice" within the meaning of the Act, *Tenafly Eruv Ass'n,* 309 F.3d at 157 n. 13 (internal quotation marks omitted), the claim was based on the same allegedly discriminatory treatment we held violates the Free Exercise Clause. And the Free Speech claim, which we likewise found unavailing, was not only based on the same treatment, but led us to conclude that the use of *eruvs* was religious conduct (and not protected religious speech), which in turn led to our holding that the Borough of Tenafly's decision to restrict that conduct violated the Free Exercise Clause. See *id.* at 161-62, 164, 168.

In this context, we conclude that the issues presented by appellants are linked sufficiently that work performed on one would likely have had value for the others. It would therefore be "difficult to divide the hours expended on a claim-by-claim basis," *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 and we decline appellees' invitation to do so. Appellants' arguments "cannot be viewed as a series of discrete claims," but are instead merely "alternative legal grounds for [the] desired outcome," *id.,* and we will award fees for work performed on all claims.

2. *Individual Items*

We now turn to particular items in the attorneys' time sheets to determine if they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933. We note at the outset that the fee schedule from Weil, Gotshal & Manges LLP ("Weil, Gotshal") includes only the hours billed by Mr. Sugarman and Mr. Yale, and about two-thirds of the hours billed by Mr. Lowenthal; it does not

include time billed by other associates or paralegals, which totals approximately 145 hours. This, with the reduction in Mr. Lowenthal's time, represents a discount of about 360 hours. The Supreme Court has recognized that " 'billing judgment' is an important component in fee setting," *Hensley, 461 U.S. at 434, 103 S.Ct. 1933* (internal quotation marks omitted), and we believe this significant discount mitigates many of appellees' concerns about "overbilling" by Messrs. Sugarman, Yale, and Lowenthal. [5]

**\*99** [4] [5] [6] We have considered thoroughly appellees' numerous challenges to the time sheets submitted by appellants, and find most of the objections to be unfounded (and, in any event, unpersuasive). For example, appellees challenge the hours Mr. Lowenthal expended drafting correspondence with the Court (about 9 hours), preparing necessary forms and statements to allow the filing of briefs in our Court (about 30 hours), and drafting the Fair Housing Act portion of the brief (about 22 hours), but we believe these hours were necessary and reasonable in length, especially as Mr. Lowenthal's hours have already been reduced by one-third. [6] Appellees also contend that the presence of several attorneys at oral argument was duplicative and unnecessary, but we note this was a complicated case with multiple appellants raising important constitutional claims, and those cases often "mandate[ ] the help of numerous attorneys for both parties," including at oral argument. *Planned Parenthood,* 297 F.3d at 272. They further challenge the time (about 140 hours) spent collectively by the attorneys on meetings and conference calls, but do not explain why this amount of consultation time is unreasonable given the complexity of this case and the many parties involved. [7] Moreover, they complain that appellants' attorneys spent time consulting with the *amici* in this case (which appellees seem to suggest is improper), but do not explain why this was inappropriate and not compensable. [8]

**\*\*4** [7] Appellees also point out that Mr. Yale's entries on his time sheets often report his "att[entio]n to" a matter (rather than a detailed description of his exact task), and contend those entries should be disallowed as violations of our rule that a "fee petition is required to be specific enough to allow the ... court to determine **\*100** if the hours claimed are unreasonable for the work performed." *Washington v. Phila. County Ct. of Common Pleas,* 89 F.3d 1031, 1037 (3d Cir.1996) (internal quotation marks omitted). We have explained, however, that the documentation requirements for time charged are not exacting: "a fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, ... [but] it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* at 1037-38 (internal quotation marks omitted). While it is advisable in certain circumstances to provide greater specificity than Mr. Yale does, we believe most of his entries ("Attn to brief," "Attn to reply," *etc.*) are sufficiently clear to allow us to know the tasks to which he devoted his time, and we therefore conclude they are documented properly. We note two exceptions below in our itemized list of reductions of the requested fees.

[8] We are also unpersuaded by appellees' objections to the time spent preparing the briefs for this appeal and preparing for oral argument. Appellees contend that Messrs. Sugarman, Yale, Lowenthal, and Shapiro spent a combined 327 hours preparing their opening brief and a combined 173 hours preparing the reply brief, and expended (in the aggregate) 86 hours preparing for oral argument. As stated, this was a complex constitutional case with numerous appellants and *amici,* and we added to the mix by requesting (two weeks before oral argument) supplemental briefing from the parties regarding symbolic speech issues in the case. Under these circumstances, we are confident that the amount of time charged by appellants' attorneys to draft, review, and file the briefs, and argue the case, is not excessive. [9]

Having concluded that the bulk of appellants' claimed hours were expended reasonably, we note the following entries that are not appropriately compensable.

[9] (1) Although, as noted above, Mr. Yale's entries noting his "att[entio]n" to various matters are mostly sufficient to satisfy our documentation requirements, we note two entries that are not. A December 11, 2001 entry for "attn to papers" and a November 1, 2002 entry for "attn to status" do not provide any indication to what "papers" or "status" Mr. Yale was attending. We believe these entries are not sufficiently precise to "determine if the hours claimed are unreasonable for the work performed," *Washington,* 89 F.3d at 1037 (internal quotation marks omitted), and we will therefore reduce his time charge by two hours and 30 minutes (the rounded combined total of the two entries).

**\*\*5** [10] (2) A similar problem arises with two of Mr. Sugarman's entries: a December 2, 2002 entry for "e-mails" and a December 3, 2002 entry for "conference call" are not

specific enough for us to know the subject of his actions, and we will therefore reduce his time charge by one hour and 30 minutes (the combined total of the two entries).

 [11]   (3) We note that Mr. Sugarman spent approximately seven hours granting post-decision telephone interviews to reporters.  *101  We have held in the past that such matters are not ordinarily compensable as legal services, *see Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir.1995), and we will therefore reduce Mr. Sugarman's time charge by seven hours.

 [12]   (4) Like Messrs. Sugarman and Yale, Mr. Shapiro has two entries that are too vague to allow us to determine the nature of his work: an October 1, 2001 entry for "correspondence" and a January 14, 2002 entry for "review papers." We will, therefore, reduce his time charge by one hour and 30 minutes (the combined total of the two entries).

 [13]   (5) Mr. Shapiro also charged a total of three hours for administrative tasks, including "organize and file correspondence regarding appeal" (one hour), "fax merits disposition to Bob Sugarman and staff" (three-quarters of an hour), "forward order from Court of Appeals" (half an hour), and "fax affidavit and correspondence" (three-quarters of an hour). We are somewhat reluctant to approve compensation at the high rates charged for attorneys' professional assistance "when a lawyer spends time on tasks that are easily delegable to non-professional assistance." *Halderman,* 49 F.3d at 942. We will therefore reduce Mr. Shapiro's time charge by two hours (a two-thirds reduction).

### C. Lodestar Amounts and Adjustments

With these reductions in mind, we calculate the lodestar amounts as follows:

|  | Approved Hourly Rate | Approved Hours [10] | Lodestar Amount [11] |
|---|---|---|---|
| **Mr. Sugarman** | $500.00 | 248.00 (reduced by 8.5 hours) | $124,000.00 |
| **Mr. Yale** | $350.00 | 245.00 (reduced by 2.5 hours) | $ 85,750.00 |
| **Mr. Lowenthal** | $175.00 | 400.00 (no reduction) | $ 70,000.00 |
| **Mr. Shapiro** | $281.61 | 99.75 (reduced by 3.5 hours) | $ 28,091.00 |
| **Mr. Lewin** | $550.00 | 118.25 (no reduction) | $ 65,038.00 |
| **Ms. Lewin** | $315.00 | 31.25 (no reduction) | $ 9,844.00 |

 [14]   We now consider whether these amounts should be adjusted based on any of the factors mentioned in footnote 2 above. Appellees contend that an adjustment is appropriate because the issues involved in this case were not novel or complicated and many of appellants' arguments were not persuasive on appeal. We have already rejected the latter objection in Part II.B.1 above. We reiterate that when a party's claims are connected such that it would be "difficult to divide the hours expended on a claim-by-claim basis," *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 it is appropriate to award compensation for work on all claims rather than only those claims that were successful. That is the case here. Just as we deemed it inadvisable to consider appellants' claims in isolation from each other when determining the lodestar amounts, we will not do so when considering whether to adjust those amounts.

 **6  We also reject appellees' contention that this case was not novel or complicated. To  *102  the contrary, as we have already stated, the case presented complicated and important

questions of constitutional law. Though we relied on existing precedents in deciding the case, this does not mean the case was easy or the result obvious. We do not, therefore, believe it appropriate to decrease the lodestar amounts on that basis.

Thus, in the absence of evidence to the contrary, we presume the lodestar amounts are reasonable, *see, e.g., Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and adopt those amounts as the reasonable fees appellants' counsel are owed.

### III.

Appellees also contest appellants' claims for costs and expenses related to this litigation. These amounts-which are claimed only by Messrs. Sugarman, Yale, Lowenthal, and Shapiro-include copying, printing, use of electronic databases like Lexis-Nexis and Westlaw, travel, mail and shipping, and telephone charges. They seek a combined total of $33,373.63.

[15] [16] It is well established that costs may be recovered as part of the "reasonable attorney's fee" under 42 U.S.C. § 1988. *See Abrams v. Lightolier, Inc.,* 50 F.3d 1204, 1225-26 (3d Cir.1995). Appellants have submitted a detailed, itemized list of these expenses that is over 40 pages long, and we therefore reject appellees' argument that the expenses are not documented sufficiently. We are also confident that the costs and expenses requested by Messrs. Sugarman, Yale, Lowenthal, and Shapiro are reasonable. Indeed, though they state conclusorily that certain charges are excessive, appellees have presented no evidence of overbilling. Moreover, our extensive experience with law firm billing practices convinces us that the amounts claimed (about $6,700.00 for copying, $12,000.00 for the use of electronic databases, $11,200.00 for transcripts and printing costs, and several lesser expenses) are all well within the norm of such expenses in complex litigation of this sort.

[17] Nonetheless, with respect to printing and copying costs, it appears some of the charges may be duplicative of photocopying charges already awarded in the judgment that accompanied our earlier decision on the merits. Weil, Gotshal has already obtained $2,025.15 to cover costs of photocopying its briefs and appendix, and we therefore reduce the expenses approved here by that amount. Thus, we grant Weil, Gotshal costs and expenses in the amount of $30,445.00, and Hellring, Lindeman, Goldstein & Siegal LLP (Mr. Shapiro's law firm) $903.00 in costs and expenses.

### IV.

Based on the foregoing, the motion by appellants Tenafly Eruv Association, Inc. and Stefanie Dardik Gotlieb for attorneys' fees and costs is hereby granted in the amount of $339,189.00. The motion for attorneys' fees by appellants Chaim Book, Yosifa Book, and Stephen Brenner is hereby granted in the amount of $74,882.00.

**All Citations**

195 Fed.Appx. 93, 2006 WL 2547253

### Footnotes

1   The parties agree that the "relevant community" in this case is the State of New Jersey. This comports with our ordinary reliance on the "forum rate rule," which allows an attorney to claim the prevailing rate for his services in the district in which the litigation was lodged. *See Pub. Interest Research Group,* 51 F.3d at 1186-87.

2   A non-exhaustive list of these factors includes: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley,* 461 U.S. at 429-30 n. 3, 103 S.Ct. 1933; *Pub. Interest Research Group,* 51 F.3d at 1185 n. 8 (same).

3   Appellants cite a December 2002 article from the *New Jersey Law Journal* that lists the rates several top New Jersey law firms charge for the work of their partners and associates. See Charles Toutant, *Firms Hike Rates, Weak Economy Notwithstanding,* N.J. L.J., Dec. 23, 2002, at 1025.

4   Appellees argue that, once the claimed hourly rate is disputed, a hearing is necessary to determine whether the rate is reasonable. *See, e.g., Smith v. Phila. Housing Auth.,* 107 F.3d 223, 225 (3d Cir.1997) ( "Once the plaintiff has carried

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.   8

this burden [*i.e.,* submitting evidence of the appropriate hourly rate], [the] defendant may contest that prima facie case only with appropriate record evidence.... If hourly rates are disputed, the ... court must conduct a hearing to determine the reasonable market rates."). But as our discussion in *Smith* makes clear, it is not enough merely to contest the claimed hourly rate; rather, appellees must submit *evidence* of a different reasonable hourly rate. They have not done so here. Instead, they state conclusorily that the requested rates are "excessive" and cite two District Court cases from 1998 (four years prior to our decision in this case) awarding lower fees to different attorneys in different cases. *See* Appellees' Response to Motion for Fees, at 13 (citing *Apple Corps. Ltd. v. Int'l Collectors Soc'y,* 25 F.Supp.2d 480, 494-97 (D.N.J.1998), and *Blakey v. Cont'l Airlines, Inc.,* 2 F.Supp.2d 598, 602-03 (D.N.J.1998)). A hearing is not merited in these circumstances.

5   We also note that appellants' attorneys do not seek compensation for time spent preparing and litigating the pending motion for fees, despite the fact we have expressly approved such fees. *See Planned Parenthood of Central N.J. v. Att'y Gen. of N.J.,* 297 F.3d 253, 268 (3d Cir.2002) ("A party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application.").

6   Indeed, we note that all of Mr. Lowenthal's challenged time entries fit within the number of hours for which he does not seek reimbursement. Although his time sheets do not identify the entries that are not included in the fee he seeks (rather, he has provided a complete list of his time entries), we believe it appropriate to refuse appellees' objections to his use of time, since it appears to us all the entries to which appellees object are not included in the requested fee.

7   Appellees complain particularly that a large percentage of the hours claimed by Mr. Shapiro reflect telephone conferences with his clients and co-counsel. Appellees contend this is excessive, and further note that the fee schedules of the other attorneys do not reflect several of the telephone conferences Mr. Shapiro claims. First, we note that Mr. Shapiro was the only attorney for the Tenafly Eruv Association who did not work at Weil, Gotshal, so it is unsurprising he used the telephone more than co-counsel. As for appellees' apparent contention that Mr. Shapiro's entries are disingenuous, we note that co-counsel *did* list almost all of the same telephone conferences, either explicitly indicating a telephone conference with Mr. Shapiro or noting more generally attention to the subject matter. Indeed, of the 43 entries containing telephone conferences on Mr. Shapiro's time sheets, we have found only eight that do not correspond to equivalent entries on the time sheets of co-counsel. This could, of course, merely reflect co-counsel's failure to record properly a few conversations on their time sheets. In the absence of evidence to the contrary, we will not penalize Mr. Shapiro by reducing his fee, especially since the overall number of hours Mr. Shapiro spent consulting his clients and co-counsel appears reasonable.

8   As then-Judge (now Justice) Alito observed in *Neonatology Associates, P.A. v. Commissioner of Internal Revenue,* 293 F.3d 128 (3d Cir.2002) (Alito, J., in chambers), the idea that an *amicus* must be impartial is "outdated," since "an amicus who makes a strong but responsible presentation in support of a party can truly serve as the court's friend." *Id.* at 131. We therefore reject appellees' apparent belief that there is something unseemly about discussions between appellants and supportive *amici,* and conclude that this time is compensable.

9   Appellees also allege that Mr. Sugarman spent 19 hours reading the District Court's opinion in this case, an amount they assert is excessive. We have reviewed Mr. Sugarman's time records and do not find that he charged those hours. The only entries related to the District Court's opinion are for three hours spent reviewing the opinion, and for a total of seven-and-a-half hours spent performing several tasks, including reviewing the opinion. This is not excessive.

10  Times are rounded to the nearest quarter hour.

11  Amounts are rounded to the nearest dollar.

---

**End of Document**                                  © 2016 Thomson Reuters. No claim to original U.S. Government Works.